**APPEAL NO. 25-14153-DD**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

**MOHAMED ASKER**
Plaintiff/Appellant,

v.

**BANK OF AMERICA, N.A., et al.**

Defendants/Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
CASE NO. 1:24-cv-05323-LMM-RGV

---

# BRIEF OF DEFENDANT-APPELLEE BANK OF AMERICA, N.A.

---


Jennifer Burbine
MCGUIREWOODS LLP
1075 Peachtree Street NE
35th Floor
Atlanta, GA 30309-3900
404.443.5736 (Direct Line)
jburbine@mcguirewoods.com

*Counsel for Defendant/Appellee*
*Bank of America, N.A.*[1]


---

[1] Undersigned counsel previously represented Defendant Landsafe Appraisal Services, Inc. ("Landsafe") in the trial court in this matter. Landsafe was previously a wholly owned subsidiary of Bank of America Corporation but is no longer an existing legal entity. As a result, undersigned counsel no longer represents Landsafe in this action or on appeal. This brief is filed solely on behalf of Defendant/Appellee Bank of America, N.A.

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Local Rules 26.1-1, 26.1-2, and 28-1(b), Defendant-Appellee Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P.[2] ("BANA" or "Appellee"), by and through the undersigned counsel, certifies that the following is a full and complete list of all parties in this action, including any parent corporation and any publicly-held corporation that owns 10% or more of the stock of a party:

**Defendant/Appellee: Bank of America, N.A.**

Bank of America, N.A. is wholly owned by BAC North America Holding Company ("BACNAH"). BACNAH is a direct, wholly owned subsidiary of NB Holdings Corporation ("NB Holdings"). NB Holdings is a direct, wholly owned subsidiary of Bank of America Corporation. Bank of America Corporation is a publicly held company whose shares are traded on the New York Stock Exchange. Bank of America Corporation has no parent company and no publicly held corporation owns more than 10% of Bank of America Corporation's shares. Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, Appellee Bank of America, N.A. files this amended Certificate of Interested Persons and Corporate Disclosure Statement to update its prior disclosure regarding Berkshire Hathaway Inc., which

[2] As of July 1, 2011, BAC Home Loans Servicing, LP no longer exists as a legal entity, as it merged with and into Bank of America, N.A.

is no longer a publicly held corporation that owns 10% or more of Bank of America Corporation's shares. Beyond that, BANA's undersigned counsel certifies the Certificate of Interested Persons are complete and accurate as of the date of this filing and require no amendment.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE....................1

1. The Original Complaint and Successive Amendments....................1
2. The District Court Orders....................2

SUMMARY OF THE ARGUMENT....................4

STANDARD OF REVIEW....................6

ARGUMENT....................6

I. The District Court Properly Denied Leave to Amend and There is No Foman Error....................6

II. Appellant's State RICO Claim Remains Time-Barred....................10

1. Appellant's Claims Fail Under Either Version of O.C.G.A. § 16-14-8....................11
2. The 2024 Lien Notice Letter Does Not Restart the Clock....................14
3. Appellant Cannot Toll His Claims Because He Has Not Demonstrated Fraudulent Concealment and Was Aware of Purported Predicate Actions....................15

III. Appellant's Federal RICO Claims Remain Time-Barred....................18

CONCLUSION....................22

STATEMENT REGARDING ORAL ARGUMENT....................22

CERTIFICATE OF COMPLIANCE....................23

CERTIFICATE OF SERVICE....................24

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Abramson v. Gonzalez*,
949 F.2d 1567 (11th Cir. 1992) ........................................................7, 9

*Blalock v. Anneewakee, Inc.*,
206 Ga. App. 676 (1992) ........................................................11

*Byrne v. Nezhat*,
261 F.3d 1075 (11th Cir. 2001) ........................................................8

*Charter Peachford Behavioral Health Sys. v. Kohout*,
504 S.E.2d 514 (Ga. Ct. App. 1998)........................................................16

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ........................................................21

*Daniel v. Amicalola Elec. Membership. Corp.*,
711 S.E.2d 709 (Ga. 2011) ........................................................17

*Foman v. Davis*,
371 U.S. 178 (1962)........................................................*passim*

*Glock, Inc. v. Harper*,
796 S.E.2d 304 (Ga. Ct. App. 2017)........................................13, 14, 15

*Huggins v. Sch. Dist. of Manatee Cty.*,
151 F.4th 1268 (11th Cir. 2025) ........................................................10

*Hunter, Maclean, Exley & Dunn, P.C. v. Frame*,
507 S.E.2d 411 (Ga. 1998) ........................................................16

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
662 F.3d 1292 (11th Cir. 2011) ........................................................6

*Klopfenstein v. Deutsche Bank Sec., Inc.*,
592 F. App'x 812 (11th Cir. 2014)........................................................12

*Lehman v. Lucom*,
727 F.3d 1326 (11th Cir. 2013) ........................................13, 19, 20

*Limoli v. First Georgia Bank*,
250 S.E.2d 155 (Ga. 1978) ....................................................................................16

*Macomber v. First Union Nat'l Bank of Ga.*,
441 S.E.2d 276 (Ga. Ct. App. 1994).............................................................17, 18

*McClung Surveying, Inc. v. Worl*,
541 S.E.2d 703 (Ga. Ct. App. 2000)....................................................................16

*McCurley v. Wells Fargo Bank N.A.*,
No. 24-10243, 2024 WL 3858914 (11th Cir. Aug. 19, 2024), cert. denied, 145 S. Ct. 1175, 221 L. Ed. 2d 253 (2025)............................................13

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ..............................................................................7

*Rice v. Chief Exam'r of Alabama Dep't of Examiners of Pub. Accts.*,
No. 24-13647, 2025 WL 1743708 (11th Cir. June 24, 2025) (unpublished) .......................................................................................................20

*Shipman v. Horizon Corp.*,
267 S.E.2d 244 (Ga. 1980) ....................................................................................16

*Silberman v. Miami Dade Transit*,
927 F.3d 1123 (11th Cir. 2019) ............................................................................10

*Stevens v. Gay*,
864 F.2d 113 (11th Cir. 1989) ................................................................................7

*Stewart v. Warner*,
571 S.E.2d 189 (Ga. Ct. App. 2002)....................................................................16

*Swinford v. Santos*,
121 F.4th 179 (11th Cir. 2024) ...............................................................................9

*Taveras v. Bank of Am., N.A.*,
89 F.4th 1279 (11th Cir. 2024) ...............................................................................6

*Tucker v. Morris State Bank*,
154 F. App'x 183 (11th Cir. 2005) (unpublished)..............................................21

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ..............................................................................9

*Williams v. McNeil*,
557 F.3d 1287 (11th Cir. 2009) ....................................................................6

**Statutes**

18 U.S.C. § 1961(1) ....................................................................................21

O.C.G.A. § 9-3-96.............................................................................10, 15, 16

O.C.G.A. § 16-14-3(5)(A) ...............................................................................14

O.C.G.A. § 16-14-8......................................................................10, 11, 13, 15

Racketeer Influenced and Corrupt Organizations Act (“RICO”)...................*passim*

**Other Authorities**

11th Cir. R. 28-1(i)..........................................................................................1

Fed. R. App. P. 28(b)(3) ....................................................................................1

Fed. R. Civ. P. 9(b) ...........................................................................................3

Fed. R. Civ. P. 15 ..............................................................................................5

Fed. R. Civ. P. 15(a)..........................................................................................6

Fed. R. Civ. P. 59(e)..........................................................................................3

## STATEMENT OF THE CASE[3]

1. *The Original Complaint and Successive Amendments*

On November 20, 2024, Appellant initiated this action with a 403-page complaint arising from the origination and servicing of his residential mortgage loan, the assignments of the related security instrument, and the subsequent nonjudicial foreclosure of the property, which Appellant characterizes as the product of forged documents and a "fraud-for-profit" scheme. (Doc. 1). On December 17, 2024, the District Court struck the initial complaint as a shotgun pleading and granted leave to amend within twenty-one days of service. (Doc. 18). On January 13, 2025, Appellant filed a Motion for Extension of time to file an Amended Complaint. (Doc. 19). On the same day, Appellant filed an untimely Amended Complaint. (Doc. 20). Appellant also filed a Motion for Leave to serve New Summons and Amended Complaint upon Defendants. (Doc. 21). The District Court struck both untimely amendments as shotgun pleadings. (Vol. 1, Doc. 45 at 36). In its December 17, 2024 Order, the court detailed how Appellant's complaint fell short of minimum pleading requirements and granted him leave to amend. (Doc. 18).

On March 3, 2025, Appellant filed a Motion for Relief Concerning Defective Service of Process and asked for another extension of time to amend his Complaint. (Doc. 49). On April 7, 2025, the Court entered an Order (Doc. 56) which granted

[3] Pursuant to 11th Cir. R. 28-1(i), and Fed. R. App. P. 28(b)(3) Appellee includes a Statement of the Case because Appellee does not accept Appellant's characterization of the procedural history and issues.

Documents 19, 21, and 49, giving Appellant a final extension of time to file an amended complaint that complied with the Federal Rules of Procedure and the December 17, 2024 Court Order. The court explained the deficiencies in Appellant's prior pleadings and, in light of the lenient standards afforded to pro se litigants, granted him another opportunity to amend with explicit warning that this would be his final opportunity. (Doc. 56).

On April 21, 2025, Appellant filed a pleading titled "Fourth Amended Complaint." (Doc. 57). Eight days later, on April 29, 2025, without the court's leave and in direct violation of the Federal Rules of Civil Procedure and the court's order, Appellant filed a pleading titled "Fifth Amended Complaint." (Doc. 58). On the same day, Appellant also filed a pleading titled "Notice of Filing Second Amended Complaint." (Doc. 59). Multiple defendants moved to dismiss both complaints as shotgun pleadings, including BANA. (Doc. 132).

2. *The District Court Orders*

Despite multiple opportunities to amend, the Magistrate Judge issued a comprehensive Final Report and Recommendation ("R&R") on September 9, 2025, reasoning that the operative Fourth and unauthorized Fifth Amended Complaints remained shotgun pleadings and that further amendment was not warranted. (Doc. 218). The R&R properly concluded that both the Fourth and Fifth Amended Complaints constituted classic shotgun pleadings, characterized by (i) conclusory,

vague, and immaterial facts not connected to any cause of action; (ii) failure to specify which defendants were responsible for which acts; and (iii) allegations of fraud that did not satisfy Rule 9(b)'s heightened pleading requirements. *Id*. Nonetheless, for good measure, the R&R addressed in extensive detail additional problems with the merits of the complaints: that Appellant's claims fell far outside the applicable statutes of limitations, that he lacked standing to challenge the validity of his security deed, and that his racketeering, discrimination, and due process claims lacked factual support. *Id*. Appellant filed objections to the R&R and moved for leave to file a Proposed Seventh Amended Complaint ("PSAC"). (Doc. 222).

On November 6, 2025, the District Court adopted the R&R, overruled Appellant's objections, dismissed the action with prejudice, and entered final judgment. (Doc. 239). The court initially denied the motion for leave to file the PSAC as moot. (Doc. 223). Following Appellant's Rule 59(e) motion (Doc. 242), the District Court amended its judgment to make clear that leave to file the PSAC was denied on the merits under the *Foman* factors, based on repeated failure to cure, undue delay, and futility. (Doc. 243). The court specifically noted that it did not need to consider the substance of the proposed pleading because the R&R had already identified the core substantive and procedural defects that rendered further amendment futile. *Id.*

On November 21, 2025, Appellant filed a Notice of Appeal to this Court from the final judgment entered on November 6, 2025 (Doc. 240), and from all prior and subsequent orders that merge into that judgment, including the Order adopting the R&R and dismissing the action with prejudice (Doc. 239) and the amended post-judgment order dated November 14, 2025 denying Appellant leave to file the PSAC (Doc. 243). (Doc. 245). Appellant now asks this Court to vacate in part and remand so he can amend yet again.

## SUMMARY OF THE ARGUMENT

This appeal arises from the District Court's dismissal of Appellant's sprawling lawsuit arising from the origination and servicing of his residential mortgage loan, the assignments of the related security instrument, and the subsequent nonjudicial foreclosure of his property in Newton County, Georgia, which Appellant characterizes as the product of forged documents and a "fraud-for-profit" scheme. Over the course of more than a year, Appellant filed six versions of his complaint, each one a shotgun pleading that failed to comply with the Federal Rules of Civil Procedure despite repeated warnings and opportunities to cure. The District Court exercised careful, reasoned discretion in dismissing the action with prejudice and denying leave to file yet another proposed amendment. Appellant's request for relief is baseless, there is no authority for the extraordinary remedy he seeks, and his continued efforts to resurrect his case only squander judicial resources.

Appellant now raises three issues on appeal. First, he contends the District Court abused its discretion under Rule 15 and the Foman Doctrine by denying leave to file his PSAC without considering the substance of the proposed pleading. Appellant's argument distorts both the procedural record and settled law. The District Court did not refuse to consider the proposed pleading; it considered the motion, found further amendment futile in light of the record, and provided multiple reasons for denial grounded in the *Foman* factors. Second, Appellant argues that his Georgia RICO claim is timely based on statutory fraud tolling and a theory that the racketeering conduct has not "terminated." Georgia law precludes both arguments. The alleged predicate acts concluded no later than 2014, and Appellant's own pleadings demonstrate he was aware of the alleged underlying conduct years before suit was filed, defeating any tolling theory. Third, Appellant invokes the separate accrual doctrine to argue that his federal RICO claim is timely based on a November 2024 lien-status notice. However, the continuing effects of an earlier injury do not trigger separate accrual. The 2024 notice, which on its own terms is informational only and does not demand payment, is precisely the kind of continuing consequence that cannot create a new limitations period. The District Court's judgment should be affirmed on each ground.

## STANDARD OF REVIEW

This Court reviews a district court's adoption of a magistrate judge's report and recommendation for abuse of discretion. *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009). Under that standard, the district court's ruling will be upheld unless it contains "a clear error of judgment, or has applied the wrong legal standard." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011). A district court's denial of a motion for leave to amend a complaint is reviewed for abuse of discretion. *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1285 (11th Cir. 2024).

## ARGUMENT

### I. The District Court Properly Denied Leave to Amend and There is No *Foman* Error.

Appellant's argument that the District Court erred by not properly applying the Foman doctrine is meritless, and this Court has already denied Appellant's motion to vacate and remand on these grounds in its Order dated February 12, 2026. (Doc. 63). The record makes clear that the District Court acted well within its discretion in refusing to allow yet another amendment.

While Rule 15(a) permits leave to amend a complaint "when justice so requires," this is not an absolute right. *See* Fed. R. Civ. P. 15(a). Courts may deny leave for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue

prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (affirming denial of further amendment); *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir. 1992) (affirming denial of the proposed seventh amended complaint). District courts have broad discretion to refuse further amendments, and this Court will not disturb that decision absent a clear abuse of discretion. *Abramson*, 949 F.2d at 1581; *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir. 1989).

Contrary to Appellant's assertion that the District Court denied leave "on the merits" while "refusing to consider the substance of the proposed pleading" (Appellant's Br. at 12), the District Court properly applied the *Foman* factors. While the District Court initially denied the motion for leave to file the PSAC for being "moot," it later clarified its ruling and denied it on the merits. (Doc. 243 at 5-6). The Court noted that it directly responded to Appellant's request to seek another amendment and the underlying court order "answered that question" by "concluding that further leave to amend was not warranted." *Id.* at 4. Thus, the Court's judgment is in harmony with the Magistrate Judge's R&R and explicitly underpins its conclusion that the *Foman* factors warranted denial of further leave to amend.

Even before its clarification, the District Court's determination was expressly premised on the *Foman* factors. After dismissing Appellant's fourth and fifth

amended complaints as shotgun pleadings that "fail[ed] to give the defendants adequate notice of the claims against them," the District Court concluded that "further leave to amend was not warranted because Asker failed to meaningfully cure the deficiencies in his pleadings despite being given two opportunities to do so." (Doc. 243 at 4-5; *see also* Doc. 239 at 6-9). Importantly, the District Court explained that, "[b]ecause the [Order adopting the R&R, Doc. 240] dismissed Asker's operative pleading and denied him leave to further amend, it did not need to consider the substance of the proposed seventh amended complaint." (Doc. 243 at 5). This is precisely the analysis *Foman* requires when a plaintiff has repeatedly failed to cure pleading deficiencies.

The District Court properly adopted the Magistrate Judge's R&R, which exhaustively detailed the pleading defects: the complaints "are riddled with conclusory, vague, and immaterial facts, not obviously connected to a cause of action;" "fail to adequately specify which defendants are responsible for which actions;" and "allege fraud without stating with particularity the circumstances constituting the fraud." (Doc. 218 at 12-14). Despite receiving clear instruction on how to cure these deficiencies several times, Appellant "once again missed the mark by submitting another shotgun pleading . . . characterized by the same types of deficiencies the Court repeatedly instructed him to avoid." (Doc. 239 at 7-8). *See Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if

tolerated, harm the court by impeding its ability to administer justice.”).

The Appellant’s repeated failures are exactly what the *Foman* doctrine requires in rejecting amendment. *See Abramson*, 949 F.2d at 1581 (“Considering the lateness of the amendment, its apparent futility, and the unfairness to the defendants, we cannot say that the district court abused its discretion when it denied the plaintiffs’ motion to amend the complaint a seventh time”); *Swinford v. Santos*, 121 F.4th 179, 192 (11th Cir. 2024) (finding amendment would be futile because plaintiff’s factual claims are legally unsupported).

Even assuming *arguendo* the District Court should have examined the PSAC’s substance, any error was harmless because the result would be unchanged. The PSAC suffers from the same fatal defects: the fraud claims remain time-barred, Appellant lacks standing to challenge the assignment of his security deed, and his RICO claims lack factual support. (Doc. 218 at 21-40). The proposed pleading did not cure the timeliness defects, did not transform routine foreclosure communications into actionable racketeering, and did not eliminate his reliance on shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff’s Off.*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015) (“Where a plaintiff fails to make meaningful modifications to her complaint” after being given an opportunity to replead, “a district court may dismiss the case.”). The District Court was not required to accept Appellant’s self-serving descriptions of his revisions at face value. Allowing further amendment

would merely force Appellee to "expend further time and resources" responding to the same baseless claims. *Huggins v. Sch. Dist. of Manatee Cty.*, 151 F.4th 1268, 1286 (11th Cir. 2025) (finding that "[n]one of the proposed changes would strengthen the claims that will move forward against [the defendant]").

While pro se plaintiffs receive an "extra dose of grace," the District Court extended more than enough leniency. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132-33 (11th Cir. 2019). Thus, the dismissal with prejudice should be affirmed.

## II. Appellant's State RICO Claim Remains Time-Barred.

Appellant's Georgia RICO claim fails as a matter of law because it is untimely under O.C.G.A. § 16-14-8, and neither statutory fraud tolling nor the amended "termination rule" salvages it. The District Court correctly concluded that the Georgia RICO claim falls well outside the five-year limitations period and that Appellant's tolling theory is unsupported by the pleadings and the record. (Doc. 218 at 27-32); Doc. 239 at 6-9. The R&R explained that Appellant's claims, including federal and Georgia RICO, were brought "far outside of the applicable limitations period." *Id*. at 27. Appellant does not dispute that the foreclosure occurred in 2011. App. Br. at 7-10. Instead, Appellant attempts to shift the focus by positing that: (1) statutory fraud tolling under O.C.G.A. § 9-3-96 preserved the claim through July 1, 2015, and the amended version § 16-14-8, which he deems the "termination rule,"

applies and save his claims; and (2) the purported racketeering conduct "has not terminated" because a November 11, 2024 lien-status notice supposedly constitutes a fresh enforcement act. App. Br. at 12, 14-15. Both theories fail as a matter of Georgia law.

1. *Appellant's Claims Fail Under Either Version of O.C.G.A. § 16-14-8.*

Under Georgia law, a civil RICO action "may be commenced up until five years after the conduct in violation of a provision of this chapter terminates." O.C.G.A. § 16-14-8. The statute thus imposes a five-year limitations period measured from the termination of the alleged racketeering conduct – not from discovery of injury. Prior to the 2015 amendment of § 16-14-8, the statute of limitations began "when the civil RICO cause of action accrues" or when "the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern." *See Blalock v. Anneewakee, Inc.*, 206 Ga. App. 676, 678 (1992). Under each version, Appellant's claims are clearly barred.

Under the pre-amendment version, Appellant's Complaint and exhibits undermine his position that he did not discover or could have discovered acts associated with the alleged racketeering in the exercise of due diligence. In fact, Appellant's briefing concedes that he was aware of the foreclosure and his contentions of improper loan accounting as early as 2011 and no later than 2013. (App. Br. at 9-11, 14) (acknowledging the 2011 foreclosure sale; the existence of

the purported "Freddie Mac I" modification; the October 25, 2013 BANA executive letter representing the account was "book-lossed" and "paid through" October 2013; all of which Appellant himself describes in detail in his Statement of the Case and attaches as exhibits to his pleadings).

Indeed, Appellant's theory depends on those very events from 2011-2013 as predicate acts underpinning his RICO claims. The District Court correctly recognized that "the exhibits reveals [sic] that Asker had access to a majority of the documents he contends supports his claims of fraud, including letters and statements he received, court filings, and the numerous assignments of the security deed that were recorded in public land records." (Doc. 218 at 31). Therefore, Appellant's RICO claims should be dismissed. *Klopfenstein v. Deutsche Bank Sec., Inc.,* 592 F. App'x 812, 815 (11th Cir. 2014) (affirming RICO claims were time barred under pre-amendment version of § 16–14–8 because the plaintiff could have reasonably discovered the alleged RICO conduct).

Likewise, under the "termination rule" of the post-2015 amendment, Appellant's claims fail because the alleged actions ended well before he filed his suit. The record confirms that BANA's involvement with Appellant's loan ended nearly a decade before this lawsuit was filed. On May 26, 2015, BANA assigned the Security Deed to U.S. Bank as Trustee for PROF-2013-S3 Grantor Trust II. *See* Doc. 218 at 35 ("assignment from BANA to U.S. Bank as Trustee, filed May 26, 2015);

App'x Vol. 2, Doc. 46 at 146 of 171 (¶ 74)). Subsequent assignments transferred interest to other entities with no further involvement by BANA. *Id.* Appellant filed suit in December 2024, more than nine years after BANA's last connection to the loan. Hence, even under the most generous limitations period applicable to any of Appellant's claims, they are time-barred by at least four years as it would have expired in 2020. *McCurley v. Wells Fargo Bank N.A.*, No. 24-10243, 2024 WL 3858914, at *3 (11th Cir. Aug. 19, 2024), cert. denied, 145 S. Ct. 1175, 221 L. Ed. 2d 253 (2025) (affirming RICO claims as barred when pro se Appellant brought claims by bringing "claim seven years after 2015"); *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) (holding that only a new predicate act giving rise to a "new and independent injury" can restart the limitations clock, and that "a continuation of damages into a later period will not serve to extend the statute of limitations for a RICO action").

Nor can Appellant's reliance on *Glock, Inc. v. Harper*, 796 S.E.2d 304, 306 (Ga. Ct. App. 2017) revive his claims. Appellant invokes *Harper* for the proposition that his claim needed only to be "legally viable" as of July 1, 2015 to benefit from the post-2015 amendment to O.C.G.A. § 16-14-8. App. Br. at 14. However, *Harper* does not alter the five-year termination rule or relax the requirement that a claim be timely under the statute in effect when the conduct terminated. Instead, the *Harper* court held that § 16-14-8 cannot be retroactively applied to claims that accrued

before the July 1, 2015 revision. *Harper*, 796 S.E.2d at 306 ("In the instant case, the statute certainly contains no language imperatively requiring retroactive application of the revised limitation period, and nothing in the act as a whole demands a conclusion that the legislature intended such."). As such, the *Harper* court dismissed the RICO claims "as barred by the pre-July 1, 2015 limitation period." *Id*. at 306. Likewise, Appellant's claims in the case *sub judice* are barred by the termination rule and under the pre-termination rule because Appellant had actual notice of the alleged actions and he waited nine years to file suit after Appellee's alleged involvement terminated.

2. *The 2024 Lien Notice Letter Does Not Restart the Clock.*

Appellant next contends that the racketeering conduct "has not terminated" because a November 11, 2024 lien-status notice sent by a party other than Appellee purportedly "is a fresh enforcement step." App. Br. at 12, 15. At the outset, the 2024 lien letter (the "SPS Letter") sent by Select Portfolio Services ("SPS") does not constitute a predicate act under O.C.G.A. § 16-14-3(5)(A). The SPS Letter is a routine serving letter and cannot plausibly be alleged or accepted as a predicate act for a RICO claim. Moreover, as noted, Appellee has had no direct involvement with the loan since 2015, which was later transferred several times. *See* Doc. 218 at 35 (assignment from Appellee to U.S. Bank as Trustee, filed May 26, 2015); (Vol. 2, Doc. 58 at 146, ¶ 74).) Appellant cannot attribute SPS's 2024 informational letter

that expressly disclaimed that, "[t]his notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation" to Appellee or as a part of any larger alleged racketeering activity. This is precisely the type of bootstrapping that Georgia law prohibits. *Harper*, 796 S.E.2d at 306. Appellant's allegations describe, at most, a completed foreclosure sale and subsequent account servicing. The District Court correctly concluded that this "act" cannot be the basis for a predicate crime. (*See* Doc. 218 at 36). Accepting Appellant's theory would render § 16-14-8 meaningless in foreclosure-related disputes, as any post-foreclosure communication could be labeled a new "enforcement" or predicate act.

In sum, the five-year limitations period under O.C.G.A. § 16-14-8 expired long before this action was filed. The alleged predicate acts concluded no later than the foreclosure and related servicing events in or around 2011-2015. Appellant's fraud tolling theory fails because he was aware of the alleged conduct. The District Court correctly dismissed the Georgia RICO claim as time-barred, and this Court should affirm.

3. *Appellant Cannot Toll His Claims Because He Has Not Demonstrated Fraudulent Concealment and Was Aware of Purported Predicate Actions.*

Even assuming the limitations period had not already expired, Appellant's attempt to invoke Georgia's statutory fraud tolling provision, O.C.G.A. § 9-3-96,

does not save his claims. That statute provides that "[if] the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96. Georgia courts have repeatedly held that this tolling provision applies only where there is actual fraud that conceals the existence of the cause of action and prevents the plaintiff from filing suit. *See Shipman v. Horizon Corp.*, 267 S.E.2d 244, 246 (Ga. 1980); *McClung Surveying, Inc. v. Worl,* 541 S.E.2d 703, 706 (Ga. Ct. App. 2000). "Mere" silence, ignorance of the facts, or failure to disclose is insufficient as the plaintiff must show an independent act of concealment that "debarred or deterred" the filing of suit. *See Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 507 S.E.2d 411, 413 (Ga. 1998); *Limoli v. First Georgia Bank*, 250 S.E.2d 155, 157 (Ga. 1978); *Stewart v. Warner*, 571 S.E.2d 189, 190 (Ga. Ct. App. 2002). Instead, "some trick or artifice must be employed to prevent inquiry, elude investigation, or mislead and hinder the plaintiff from obtaining information necessary to reveal the existence of a cause of action." *Charter Peachford Behavioral Health Sys. v. Kohout*, 504 S.E.2d 514, 522 (Ga. Ct. App. 1998).

To establish fraudulent concealment, a plaintiff must prove that: (1) the defendant committed actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and (3) the plaintiff exercised reasonable diligence to discover his cause

of action despite his failure to do so within the statute of limitations. *Daniel v. Amicalola Elec. Membership. Corp.*, 711 S.E.2d 709, 716 (Ga. 2011). Appellant does not and cannot satisfy that standard. Georgia courts are clear that where the facts underlying the cause of action are known to the plaintiff, the statute is not tolled. *Macomber v. First Union Nat'l Bank of Ga.*, 441 S.E.2d 276, 278-79 (Ga. Ct. App. 1994) (holding fraud did not toll the statute of limitations where the plaintiff had access to bank records that would have shown payments were not being applied to the loan as contemplated). Appellant contends that an October 25, 2013 letter from Appellee's chief executive officer represented the account was "book-lossed" and "paid through" October 2013, and that this representation "reasonably deterred action by representing the delinquencies as resolved." App. Br. at 14. This argument is self-defeating. Far from concealing the cause of action, the 2013 letter expressly informed Appellant that his account had been "book-lossed" and was "paid through" October 2013—disclosures that, on their face, put Appellant on notice of the very account treatment and loan-servicing irregularities he now characterizes as fraudulent predicate acts. (*See* App. Br. at 14; Doc. 218 at 31). This direct communication demonstrates that Appellant had actual knowledge of the alleged conduct underlying his claims. Appellant's reliance on this correspondence as the centerpiece of his tolling theory negates any fraudulent concealment argument, as

his own brief and exhibits confirm that he possessed the information he claims was concealed from him. *See Macomber*, 441 S.E.2d 276, 278-79.

For all of these reasons, the District Court correctly concluded that Appellant's Georgia RICO claim is time-barred.

## III. Appellant's Federal RICO Claims Remain Time-Barred.

Appellant's third issue repurposes his deficient theory about the 2024 lien status as another attempt to revive his state RICO claims by "invoking the separate accrual doctrine." (App Br. at 15-16). Recognizing that federal RICO has a four-year limitations period, and that this Circuit does not permit "bootstrapping," Appellant recycles the argument that the SPS Letter from 2024 caused a new and independent property injury by "renewing the cloud on title and impairing current marketability." *Id*. Appellant insists that this "present day impairment" is distinct from the "historical effects" of the 2011 foreclosure. *Id*. That argument fails for three independent reasons. First, it misstates the narrow function of separate accrual under Eleventh Circuit precedent. Second, it conflicts with the allegations in the record and when the purported injuries occurred. Third, this routine post-foreclosure status notice is not a predicate act that can create a new and independent RICO injury, and it cannot be used as a bootstrap to recover for injuries that accrued years earlier.

The statute of limitations for a civil federal RICO claim is four years, running from "when the injury was or should have been discovered, regardless of whether or

when the injury is discovered to be part of a pattern of racketeering." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001)). Appellant's own pleadings establish that the last alleged predicate acts attributable to Appellee concluded no later than 2015, when BANA assigned the Security Deed to U.S. Bank as Trustee. (*See* Doc. 218 at 35; App'x Vol. 2, Doc. 46 at 146 of 171 (¶ 74)). The last alleged predicate act by any defendant—the final purportedly forged assignment—occurred no later than October 2018. (*See* Doc. 218 at 27, fn. 18) Because both dates fall well outside the four-year limitations period, Appellant's RICO claims are facially time-barred. Recognizing as much, Appellant attempts to manufacture a "new, independent property injury" to circumvent the statute of limitations. (App. Br. at 15). Yet again, Appellant relies upon legal authority which undermines his position. *See* App. Br. at 15. In *Lehman*, this Court explicitly held that a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." 727 F.3d at 1331 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997)). Thus, when an injury is a "continuation of [an] initial injury," it "is *not new and independent*." *Lehman*, 727 F.3d at 1331 (quoting *Pilkington v. United Airlines*, 112 F.3d 1532, 1537-38 (11th Cir.1997) (emphasis in original)).

When the record in this case is measured against those principles, Appellant's separate accrual argument collapses. The R&R identified the core alleged events as (i) a purportedly fabricated note in July 2010; (ii) a foreclosure sale on November 1, 2011; (iii) property appraisals in 2012 and 2013; (iv) an insurance policy issuance in 2014; and (v) "numerous purportedly forged assignments" ranging from September 2013 through October 2018. (*See* Doc. 218 at 27.) Thus, Appellant's federal RICO claim onsets when he discovered or should have discovered an injury caused by the alleged racketeering acts. *Lehman,* 727 F.3d at 1331 (affirming that "the injury was not new and independent" but "recharacterizations and continuations of the same injuries" that occurred earlier). Simply put, a complaint filed in 2024 that challenges a 2011 foreclosure and subsequent servicing and assignment activity ending in 2018 is patently time-barred. The District Court correctly found that the claims fell "far outside the statute of limitations" (Doc. 218 at 27) and that the "racketeering" theories "lack[ed] factual support." (Doc. 239 at 6). Thus, Appellant's attempt to '"bootstrap' to salvage his time-barred claims" must fail. *Rice v. Chief Exam'r of Alabama Dep't of Examiners of Pub. Accts.*, No. 24-13647, 2025 WL 1743708, at *2 (11th Cir. June 24, 2025) (unpublished) ("So even assuming (charitably) that [the plaintiff] adequately alleged a cover-up by the [the defendants], those actions are merely a continuation of the only injury he alleges—loss of

property value due to the fraudulent appraisal. And the statute of limitations for that injury [already] accrued.").

Finally, like the Georgia RICO claim, the SPS Letter cannot constitute a predicate act under the Federal RICO statute. "[R]acketeering activity" is any indictable act under a list of criminal offenses enumerated in 18 U.S.C. § 1961(1), as well as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance. *Tucker v. Morris State Bank*, 154 F. App'x 183, 185 (11th Cir. 2005). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Sending out a routine servicing letter is not a predicate act and Appellant fails to provide any authority supporting such a proposition.

For all of these reasons, Appellant's third enumeration of error fails as a matter of law and as a matter of record. The separate accrual doctrine does not apply to continuing consequences of an earlier alleged injury. The District Court adopted that analysis and held the claims were far outside the limitations period and were not pleaded with the specificity and clarity required for racketeering claims. Appellant's attempt to repackage a purported 2024 lien status notice as a new and independent injury is therefore legally insufficient and provides no basis to disturb the dismissal.

## CONCLUSION

For the foregoing reasons, Appellee Bank of America, N.A. respectfully requests that this Court affirm the District Court's orders as to Appellee in all respects.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Bank of America, N.A. does not request oral argument in this case.

This 23rd day of February, 2026.

**MCGUIREWOODS LLP**

*/s/ Jennifer R. Burbine*

Jennifer R. Burbine
Georgia Bar No. 167807
McGuireWoods LLP
1075 Peachtree Street, N.E.
35th Floor
Atlanta, GA 30309-3900
(404) 443-5736 (Telephone)
jburbine@mcguirewoods.com

*Counsel for Appellee Bank of America, N.A.*

**CERTIFICATE OF COMPLIANCE**

In compliance with Federal Rule of Appellate Procedure 32(a)(7)(B)(i), the undersigned counsel hereby certifies that this Brief is typed in 14-point Times New Roman and complies with the type-volume limitation of FRAP 32(a)(7) and contains 6180 words.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing ***BRIEF OF DEFENDANT-APPELLEE BANK OF AMERICA, N.A.*** was electronically filed with the Clerk of the U.S. Court of Appeals for the Eleventh Circuit which served an electronic copy on each counsel of record and by placing a true and correct copy of same in the United States Mail, with first-class prepaid postage affixed thereto, properly addressed as follows:

Mohamed Hussein Asker
907 Emory Street
P.O Box 54
Oxford, Georgia 30054

I further certify that I prepared this document in 14-point Times New Roman font and complied with the margin and type requirements of this Court.

This the 23rd day of February, 2026.

**MCGUIREWOODS LLP**

*/s/ Jennifer R. Burbine*
Jennifer R. Burbine
Georgia Bar No. 167807
McGuireWoods LLP
1075 Peachtree Street, N.E.
35th Floor
Atlanta, GA 30309-3900
(404) 443-5736 (Telephone)
jburbine@mcguirewoods.com